## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **SPANISH PEAKS HOLDINGS II LLC,** | Case No. **12-60041-7** |
| **SPANISH PEAKS LODGE LLC**, and | Case No. **12-60042-7** |
| **THE CLUB AT SPANISH PEAKS LLC,** | Case No. **12-60043-7** |
| Debtors. | **JOINTLY ADMINISTERED** |

# MEMORANDUM OF DECISION

At Butte in said District this 3rd day of May, 2012.

In these jointly administered Chapter 7 cases the Court held a hearing after due notice at Butte on April 10, 2012, on the "Motion Requesting Order Determining Applicability of the Automatic Stay to Certain Claims or, Alternatively, For Relief From the Automatic Stay" (Docket No. 78 in Case No. 12-60041-7) (hereinafter the "Motion") filed on February 17, 2012, by secured lienholders CTA Inc. ("CTA"), Morrison Maierle Inc. ("Morrison"), Specialty Systems, Inc. ("Specialty"), Stresscon Inc. ("Stresscon"), Williams Plumbing Heating & Utilities Inc. ("Williams"), JTL Group Inc. d/b/a Knife River-Belgrade ("JTL"), and Walker Excavation Inc. ("Walker") (together "Movants"), joinders thereto, and objections filed by Dick Construction Company ("Dick") and Spanish Peaks Acquisition Partners, LLC ("SPAP"), successor to Citigroup Global Markets Realty Corp ("Citigroup").  The parties appeared represented by counsel.  Exhibits were admitted and argument of counsel was heard.  At the conclusion of the parties' cases-in-chief the Court took Movants' Motion under advisement.  After review of the pleadings, exhibits and applicable law, this matter is ready for decision.  For the reasons set forth below the objections will be overruled and the Motion for relief from the stay will be granted.

1

This Court has exclusive jurisdiction of the above-captioned Chapter 7 cases under 28 U.S.C. § 1334(a).  Movants' Motion is a core proceeding to determine applicability or relief from the automatic stay under 28 U.S.C. § 157(b)(2)(G).

Movants were represented at the hearing on April 10, 2012, by attorneys Jessica Penkal Hodges ("Hodges") and Dorie Refling of Refling Law Group PLLC, Bozeman, Montana.  Dick was represented by attorneys Brad J. Brown ("Brown") of Crowley Fleck PLLP, Bozeman, and John M. Steiner ("Steiner") of Leech Tishman, Fuscaldo & Lampl, LLC, Pittsburgh, PA.  SPAP/Citigroup[1] was represented by Alexander L. Roots ("Roots") of Landoe, Brown, Planalp & Reida, P.C., Bozeman.

Ace Electric, Inc. ("Ace") filed a joinder to the Motion and was represented by Bard G. Middleton of Middleton Law Firm, P.C., of Billings.  Kenyon-Noble Lumber Company d/b/a Kenyon-Noble Lumber Company and Kenyon-Noble Ready Mix ("Kenyon-Noble") filed a joinder and was represented by Bridget leFeber ("leFeber") of Berg, Lilly & Tollefsen, P.C., Bozeman, who also represented joinder MaCon Supply, Inc ("MaCon") at the hearing.  YMC, Inc. ("YMC") was represented by attorney Charles K. Smith of Poore, Roth & Robinson, P.C., Butte.  Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29, and Dick's Ex. A, B, C, D, and E, all were admitted into evidence without objection.  No witness testimony was offered.

## BACKGROUND FACTS & PROCEDURAL HISTORY

The uncontested background facts are gleaned from the exhibits and pleadings.  These jointly administered cases involve a resort development located in Big Sky, Montana, known as

---

[1]For clarity this Memorandum will refer to SPAP/Citigroup as "Citigroup."

the Spanish Peaks Resort[2].  Movants are subcontractors which provided services to the development of the Spanish Peaks resort near Big Sky, in Madison County, Montana.  Ex. 11 is the master site plan for the Spanish Peaks MPUD 2003 Resort Area Development.

Loans were made to finance the Spanish Peaks Resort project.  Citigroup provided refinancing for a bridge loan and secured the bridge loan with a mortgage.  Ex. 14 is a title insurance policy dated 11/30/2006 issued by First American Title Insurance Company ("First American") to CitiGroup regarding real property vested in Spanish Peaks Holdings, LLC. Citigroup is named as the mortgagee of a mortgage dated November 30, 2006.  Ex. 14.  The amount of insurance stated on Ex. 14 is $130,000,000, and Ex. 14 covers loss sustained by reason of the priority of any lien or encumbrance over the lien of the insured mortgage. Movants' counsel argued at the hearing that the title policy and endorsements cover construction liens.  Citigroup's counsel did not disagree, but argued that no loss or damages would be proven until the insured property was sold.

Dick was the general contractor, and engaged subcontractors to perform work and provide services for the Spanish Peaks Resort, including Movants.  Ex. 28 is a credit application filled out by Dick at Kenyon-Noble dated 7/20/06, for the purchase of concrete and other supplies in amounts estimated to exceed $50,000 yearly.  Ex. D is a purchase order signed by Kenyon-Noble as seller and Dick as buyer dated 9/27/07, for concrete, supplies, equipment and services totaling up to $2,243,200.

Another example is the "Subcontract Agreement" dated February 14, 2008, between Dick

---

[2]Ex. 19 includes a description of the development and its history, including construction history and debt structure.

and Specialty, Ex. C, in which Specialty contracted with Dick to provide services for a total payment of $1,177,000.00.  Ex. C was signed by Dick on March 24, 2008.  Ex. 27 is a "Requisition, Waiver and Release" dated 9/25/08 from Stresscon for the Spanish Peak Lodge project, in the net amount of $98,631.92.  Ex. 26 is an invoice dated October 6, 2008, issued by Dick to Spanish Peaks for a net amount due for services in the sum of $1,253,375.34.  Ex. 9 is a diagram showing the relation of the Debtors and Dick to their various lien claimants in the state court action, and Debtors' relation to CitiGroup and First American Title Insurance Company.

The subcontractors went unpaid and filed construction liens.  Williams recorded a construction lien, Ex. 5, on November 24, 2008, in Gallatin County asserting a construction lien against Lot 1 of Spanish Peaks Resort subdivision, Gallatin County, Montana, naming Spanish Peaks Holdings, LLC, as one of the contracting owners.  Ex. 5 states the unpaid amount owing as $20,460.00, and that services were last furnished on September 30, 2008.  Walker recorded a construction lien, Ex. 7, on December 29, 2008, asserting a construction lien against several tracts in Spanish Peaks Resort, Gallatin County, Montana, naming Spanish Peaks Holdings, LLC, as the contracting owners.  Ex. 7 states the unpaid amount owing as $202,104.04, and that services were last furnished on June 2, 2008.

Work on the Spanish Peaks Resort project apparently ceased in January 2009.  Specialty recorded a construction lien, Ex. 3, on January 13, 2009, asserting a construction lien against real property and improvements located at Spanish Peaks Lodge, naming Spanish Peaks Holdings, LLC, as the contracting owner and that the services were provided at Dick's request.  Ex. 3 states the unpaid amount owing as $182,617.47, and that services were last furnished on November 11, 2008.  JTL recorded a construction lien, Ex. 6, on January 13, 2009, asserting a construction lien

4

against several lots in Spanish Peaks Resort subdivision, Gallatin County, Montana, naming
Spanish Peaks Holdings, LLC, as the contracting owners.  Ex. 6 states the unpaid amount owing
as $304,179, and that services were last furnished on October 16, 2008.

Morrison recorded a construction lien, Ex. 2, on March 2, 2009, in Gallatin County
asserting a construction lien against real property and improvements located at the Spanish Peaks
resort, Gallatin County, Montana, naming Spanish Peaks Holdings, LLC, as one of the
contracting owners.  Ex. 2 states the unpaid amount owing as $538,436.43, and that services
were last furnished on February 20, 2009.  Stresscon recorded a construction lien, Ex. 4, on
March 23, 2009, asserting a construction lien against real property and improvements located at
the Spanish Peaks resort, naming Spanish Peaks Holdings, LLC, as the contracting owners.  Ex.
4 states the unpaid amount owing as $364,495.06, and that services were last furnished on
January 9, 2009.

A state court action, Cause No. DV-16-2009-0001023-BC in the Montana Eighteenth
Judicial District Court, Gallatin County, was commenced by Jim-N-I Inc. on October 28, 2009,
when the plaintiff filed a complaint seeking a money judgment and lien foreclosure.  Ex. 25.
Answers, counterclaims and cross claims were filed.  Debtor Spanish Peaks Holdings II LLC
("SP II") filed an answer, counterclaim, cross claim and demanded a jury trial on June 16, 2010.
Ex. 25.  The plaintiff was dismissed from the state court action on September 23, 2010.  Ex. 25.

The state court stayed the state court action on February 10, 2010.  Ex. 25.   It
subsequently resumed.  The state court denied a motion to stay all proceedings on May 6, 2010.
Ex. 25.

Ex. 17 is Citigroup's answer to Morrison's cross claims, dated May 5, 2010, and a

5

counterclaim against Morrison asserting a lien priority superior to Morrison's construction lien based on a mortgage, assignment of leases and rents. Ex. 17. On September 27, 2010, Morrison filed an amended answer, defenses, amended counterclaim and cross claim in DV-09-1023A. Ex. 16 seeks an award against Spanish Peaks Holdings or its successor in the amount of $538,436.43 plus interest fees and costs based on construction lien foreclosure, statute, breach of contract, unjust enrichment and quantum meruit. Ex. 16.

Discovery began in the state court action. Movants' counsel stated at the hearing that discovery is now closed, but Dick and Citigroup dispute that. Ex. 21 is an excerpt from a deposition of Burton R. Mills taken by Movants' counsel on January 14, 2011. Dick was represented at the deposition by Dick's local counsel Brown, who also examined Mills at the deposition. Kenyon-Noble took the deposition of Dick's designated representative Ronald Young on January 20, 2011. Ex. 29.

On June 13, 2011, the court in another state court action, Cause No. DV 09-1162C in the Montana Eighteenth Judicial District Court, Gallatin County, entered an order regarding motions for summary judgment, Ex. 23. The court in Ex. 23 concluded that a construction lien has priority over and was superior to a deed of trust held by Flathead Bank, and granted Williams' motion for summary judgment on Williams' lien.

A pretrial conference in DV-09-1023A originally was scheduled for April 5, 2011, but was continued a number of times to May 22, 2012, and discovery deadlines were extended for the purpose of holding depositions. Ex. 25. A mediation settlement conference was scheduled but the matter was not settled. Ex. 25.

Discovery was served on Spanish Peaks Holdings by Citigroup, and a videotaped

6

deposition of a representative of Spanish Peaks Holdings II LLC was scheduled.  Ex. 20, 25.  A deposition of Ron Young was taken on January 11, 2011.  Ex. 13.  A deposition of Martin Gagnon ("Gagnon") was conducted on September 28, 2011.  Ex. 12.  Movants scheduled a deposition of SP II's designated representative on October 12, 2011,  Ex. 20, regarding SP II's loans and dealings with Citigroup.  Movants contend that approximately 20 depositions have been taken and two remain to be taken.

On September 2, 2011, First American filed an amended complaint in Cause No. DV-11-291A in the Montana Eighteenth Judicial District Court, Gallatin County.  Ex. 15.  The amended complaint seeks specific performance and damages against Spanish Peaks entities including SP II under eight counts[3].  Ex. 15.   Ex. 15 alleges that First American required the SP Holdings LLC entities to indemnify First American if it had to satisfy any construction lien.

The court in DV-09-1023A entered on October 17, 2011, an order granting Movants' motion to amend briefing schedule which, among other things, rescheduled the pretrial conference for May 22, 2012.  Ex. A.

SP II filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware on October 14, 2011.  Schedule A lists real property including several parcels of the Spanish Peaks Resort in Gallatin and Madison counties.  An interim trustee was appointed in Delaware, Charles M. Forman, and the 341 meeting was held on November 18, 2011.  Ex. 19.  The trustee established a bar date, employed professionals and began liquidating assets.  Ex. 19.

---

[3]Counts One, Two, Three, Four are based on the Indemnity Agreement.  Count Five alleges actual fraud.  Count Six alleges constructive Fraud.  Count Seven alleges negligence. Count Eight seeks to pierce the corporate veils based on alter ego claims.  Ex. 15.

On November 9, 2011, the state court in DV-09-1023A entered an Order staying the proceedings for one year, or until the Debtor's bankruptcy case is resolved.  Ex. 18.  The court set a status hearing on October 15, 2012, and stated that if the parties did not appear at the hearing or file pleadings prior to the hearing, the court would dismiss the case as it relates to SP II.  Ex. 18.  On December 23, 2011, the state court in DV-09-296C entered "Findings of Fact, Conclusions of Law, and Order" (Ex. 22) enforcing construction liens of Williams, Knife River, HKM and Meadowlark and ordering a sale of property to satisfy the construction liens.

The subcontractor Movants, including CTA, Morrison and Walker, filed a motion dated December 6, 2011, seeking to change venue of the bankruptcy case from Delaware to the District of Montana, which was opposed by the trustee in Delaware.  Ex. E; 19.  In Ex. 19 the trustee, in opposing the motion to change venue, stated at paragraph 36 on page 9 that, "upon information and belief, discovery in the Montana State Action was nearly complete as of the Petition Date, with only a few 30(b)(6) depositions remaining, ...."

The Delaware bankruptcy court granted the motion to change venue and changed the venue of this case to the District of Montana on January 10, 2012.  A Trustee, Ross Richardson, was appointed on January 17, 2012.

On January 13, 2012, Movants' counsel filed in DV 09-1023A joint motions for limited stay and joinder in motion for new scheduling order, Ex. 8 and 10.  In Ex. 8 and 10 Movants' argued that their actions against nondebtors including Citigroup and Dick are not stayed, and they asked for a new scheduling order and for the state court action to proceed.

Movants filed their Motion in the instant cases on February 17, 2012.  The Motion seeks a determination that the automatic stay does not apply, or in the alternative seeks modification of

8

the stay for cause so that Movants can proceed with their declaratory judgment action against Dick and Citigroup in the state court action, DV-09-1023(A).

Movants state that they are not attempting to continue any of their claims for relief against the Debtors[4] in the state action, but wish to proceed with their declaratory judgment claim against Citigroup to have their liens adjudged prior to Citigroup's mortgage, and to proceed against Dick on their claims for breach of contract and the Montana Prompt Payment Act. Movants contend that they are not seeking to continue an action against property of the Debtors or to create, perfect or enforce a lien against Debtor's property. Movants argue that their liens were created by Montana's construction lien statutes, and that Dick and Citigroup are not debtors so the automatic stay does not apply, and the Debtors are not insureds or beneficiaries under the title policy and the policy is not property of the estate. Movants concede that this Court and not the state court will oversee the liquidation of the estate.

Movants also request that this Court abstain from their declaratory judgment action against Citigroup under 28 U.S.C. § 1334(c)(1), even if it is a core proceeding, in the interest of comity and respect for state law because the state court litigation has been pending for years and discovery is almost complete. Movants seek relief from the stay for cause under 11 U.S.C. § 362(d)(1) to allow the state court litigation to continue since the litigation involves multiple parties, discovery is almost complete and they are ready for trial, and allowing the litigation to proceed will assist the Court to determine how sale proceeds should be distributed.

On February 27, 2012, in the state court action DV-09-1023A, Dick filed a brief in

---

[4]Movants state they are not pursuing claims for breach of contract, violations of Montana's Prompt Payment Act, or unjust enrichment against Debtors.

opposition to the joint motion for limited stay against the Dick entities.  Ex. B.  In Ex. B Dick argues that the automatic stay should be extended to Dick, even though Dick is a non-debtor, because SP II is an indispensable party to the underlying contractual claims against Dick.  Dick requested that the state court's stay of proceedings against SP II be extended to Dick "until the Debtors' bankruptcy is finalized."  Ex. B.

On March 9, 2012, Dick filed its objection to Movants' Motion.  Dick argues that the state court action is stayed under § 362(a) because the Debtor is an indispensable party to the state court action between Dick and the Movants.  Dick argues that the Debtor is an indispensable party to Dick's ability to present one of its key defenses in the state action, the "pay-when-paid" clause which protects Dick from subcontractors until it is paid by the Debtor. Dick argues that the Movants are seeking to bifurcate their action between the state court action determining lien priority and the bankruptcy proceeding to determine the validity and amounts of the secured claims against Debtors.  Dick contends that it has not been able to ask questions of Debtor's designated representative or obtain sworn discovery responses because of the automatic stay, and that it will be impeded from offering evidence of the Debtor's failure to pay Dick at trial.

Dick argues that the bankruptcy court is the better forum to resolve issues in the state court proceeding, instead of bifurcating the case.  Dick disputes that the state court action is ready for trial, and argues that the "balance of hurt" favors denying relief from the stay and having the lien priority disputes, which are core proceedings, resolved together in a single proceeding in this Court.  Dick contends that allowing the state court action to proceed "does very little to advance the ball" and would give rise to duplication of efforts, introduce issues of

preclusion, and create the potential for delay in efforts to sell Debtors' property and distribute the proceeds. Dick argues that each of the Movants is a creditor with a claim secured by Debtors' property, and they should proceed in these bankruptcy cases to recover their claims from the estate in the claims allowance process. If Movants are not made whole, Dick submits, they can move forward with their claims against Dick after the bankruptcy concludes, the stay is terminated, and Dick can complete its discovery. At the hearing counsel for Dick and Citigroup argued that the lien priority litigation would be concluded sooner in the bankruptcy court than in state court, including the time for possible appeals.

Movants replied to Dick's objection on March 23, 2012. Movants reply that Dick is opposing their motion to create delay, and the subcontractors should not have to suffer the impact of Dick's nonpayment. Movants repeat that they are not seeking to enforce a lien against Debtors' property, but only to determine their unpaid balances and lien priority which they argue would promote judicial economy. Movants point out that the Trustee has not objected to their motion for relief from the stay, and in addition their counsel argued a the hearing that the Debtors do not oppose Movants' Motion.

Movants argue that Dick had not met its burden of proof that the Debtor is an indispensable party or that the stay should not be modified. Movants argue that Dick delayed serving its written discovery in the state court action for almost two years, and that Dick's Proof of Claim No. 57 already includes amounts due to its subcontractors, supported by its own records. Further, Movants contend that Dick may obtain discovery from the Debtor without violating the stay, citing *In re Miller*, 262 B.R. 499, 504, 507. (9th Cir. BAP 2001).

11

Beginning[5] on March 9, 2012, Citigroup filed its objection to Movants' Motion. Citigroup disputes Movants' contention that the discovery is complete or that the state court action is ready for trial, and disputes the contention that its bridge loan was intended to pay for the development of the Spanish Peaks Resort project. Citigroup argues that the declaratory judgment claim against it is stayed by § 362(a)(4) which stays any act to create, perfect or enforce any lien against property of the estate. Citigroup argues that Movants seek relief from the stay to enforce their liens by their claim for declaratory judgment, and are therefore stayed.

Citigroup argues that the stay should not be modified because it would create separate proceedings and make the bankruptcy court dependent on obtaining a final judgment in the state court action, and Citigroup argues that the sale of assets in the bankruptcy proceedings would be forced on hold while an appeal was pending in the Montana Supreme Court. Lastly, Citigroup argues that the Movants in the change of venue proceedings in Delaware made judicial admissions that the lien priority determination would be made in the bankruptcy cases and that the Montana Bankruptcy Court is uniquely qualified to apply Montana law, and that Movants are bound by these judicial admissions.

Movants' replied to Citigroup's objection repeating that Citigroup is not a debtor in bankruptcy so the stay does not apply, and if the stay applied cause exists to modify it for judicial efficiency and economy. Movants repeat that discovery in the state court action is almost complete and Citigroup did not take advantage of its opportunities to conduct and expand discovery. Movants contend they are not bound by judicial admissions to the Delaware Bankruptcy Court, that the state court is competent to decide the state law claims and lien

_____

[5]Citigroup filed its response four times through March 13, 2012.

12

priority, and they repeat that the liquidation of assets remains in this Court.

On March 22, 2012, First American filed Ex. 24, Proof of Claim No. 79 asserting an unsecured nonpriority claim in the amount of $13,306,438.19 based on the indemnity agreement signed on behalf of Spanish Peaks Holdings, LLC and Spanish Peaks Holdings, LLC.  An "Exhibit A" attached to Proof of Claim No. 79 explains the construction liens, including a construction lien filed by Dick for the sum of $10,000,000 after offsets.

On April 2, 2012, Ace filed its joinder to Movants' Motion, arguing that a state court determination of lien priority between Movants, Dick and Citigroup will not adversely impact the administration of liquidation of the estate, and that Movants' claims against Dick are not subject to the automatic stay.

Kenyon-Noble filed a joinder to Movants' Motion on April 3, 2012.  At the hearing Kenyon-Noble's counsel argued that it has state law claims against Dick for breach of contract for which it wants a judgment, and that Dick is using this bankruptcy as a shield.  MaCon filed a joinder in Movants' Motion on April 3, 2012, asking for the same relief.  YMC filed a joinder to Movants' Motion on April 4, 2012, agreeing that the state court action against Dick and Citigroup are not subject to the stay and would not have any impact on the administration and liquidation of the Debtors' assets.

## DISCUSSION

Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b).  The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives debtors a breathing spell from creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits debtors to attempt a repayment

or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy.  S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

*In re Mittlestadt*, 20 Mont. B.R. 46, 51-52 (Bankr. D. Mont. 2002) (quoting *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. Mont. 2000).

Movants' Motion does not seek relief from the stay to proceed against the Debtors in state court.  In addition they admit that liquidation of property of the estate is to be conducted in the bankruptcy court, which this Court takes to mean that they will not attempt to enforce any judgment obtained regarding relative priority of liens without leave of this Court.  This Court often crafts relief from the stay to ensure that parties return to this Court after obtaining judgment in state court.  Movants' counsel admitted at hearing that they seek only a priority determination and declaratory judgment.  Given the limited relief sought, allowing Movants to litigate their declaratory judgment action against Citigroup and construction lien priority claims against Dick would not constitute acts to enforce liens against property of the estate stayed by § 362(a)(4).  Dick and Citigroup have not filed petitions for bankruptcy relief, so they and their property are not protected by the automatic stay of § 362(a).

Movants suggest that the Court abstain from deciding their state law claims.  Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1), which provides:  "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  *In re General Carriers Corp.,* 258 B.R. 181, 189-190 (9th Cir. BAP 2001).  "[A]bstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the

14

first instance.... The act of abstaining presumes that proper jurisdiction otherwise exists." *In re General Carriers Corp.,* 258 B.R. at 190 (quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2nd Cir.1995)); *In re Lewis* , 20 Mont. B.R. 364, 368 (Bankr. D. Mont. 2003).

In *Lewis* this Court wrote:

> In *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999 (9th Cir.1997), however, the Ninth Circuit noted that "[a]bstention can exist only where there is a parallel proceeding in state court." *Id.* at 1009.  Section §1334(c) abstention should be read *in pari materia* with 28 U.S.C. § 1452(b) remand, so that § 1334(c) applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2).  *Id.* at 1010; *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001).  A decision to abstain or not to abstain is not reviewable by appeal. § 1334(d); *see also, Security Farms*, 124 F.3d at 1009-10 & n. 7; *In re Lazar*, 237 F.3d at 982.

The record shows that parallel proceedings exist in state court, and Movants' seek abstention and relief from the stay to pursue purely state law claims against non-debtors.  The Court sees no reason to bar Movants' from proceeding in state court because of judicial admissions made in Delaware that this Court is competent to decide their state law claims.  This Court is competent to decide the state law claims.  So is the Montana district court.

One difference is that the state court action, DV-09-1023A, is three years along, with discovery arguably almost complete, a pretrial conference looms and Movants are prepared to file dispositive motions.  Dick and Citigroup argue that judicial economy would be served by litigating Movants' claims in the claims allowance process, which Dick's counsel suggested the Debtors could pursue.  However, the Debtors and Trustee failed to respond to Movants' Motion, which is deemed their admission that the relief requested should be granted under Montana Local Bankruptcy Rule 9013-1(f).  Thus the Debtors and Trustee have shown no interest in litigating

15

the priority of the construction liens or the declaratory judgment action, and admit that the relief requested should be granted. They have not initiated any adversary proceedings to date. The Court does not agree that judicial economy is served by interrupting the head start the parties have in DV-09-1023A, and does not see that any adversary proceeding by the Trustee is imminent or planned in order to catch up. Forcing the Trustee to initiate and pursue an adversary proceeding would burden the estate with substantial attorney fees and other administrative expenses which may be avoided by granting Movants' Motion.

With respect to counsel's opinion that the litigation would be concluded faster in the bankruptcy system than in the Montana courts, this Court considers that argument dubious. The losing sides in DV-09-1023A would have one level of appeal available in the Montana court system, to the Montana Supreme Court, before a final decision is rendered. In the federal system appellants are guaranteed two levels of appellate review if they wish, with a possible third level of appeal to the United States Supreme Court available by petition for certiorari. As far as the possible delay to a final decision, this Court sees the potential for far longer delay in the federal system than the state.

Similarly, sale of property of the estate is not hostage to a final decision by the state court which might be delayed by appeal of a decision on priority. This Court routinely authorizes trustees to sell property of the estate free and clear of liens under authority of 11 U.S.C. § 363(f), with a provision that all valid liens attach to the proceeds of the sale according to their priority. The Court sees no reason why the sale of property of these estates should proceed any differently.

Movants move for relief from the stay for "cause" under § 362(d)(1). This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *Westco*:

16

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances.  The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".[6]  What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis."  *Tucson Estates*, 912 F.2d at 1166.  *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*Westco*, 18 Mont. B.R. at 211-12.

The bankruptcy court's decision on a motion for relief from the automatic stay is subject to the discretion of the court, and subject to review for an abuse of discretion.  *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).  The party seeking relief must first establish a prima facie case that cause exists for relief under 11 U.S.C. § 362(d)(1).  *United States v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *Duvar Apt. Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996).   Then, except for the issue of the debtor's equity in the property, in a proceeding on a motion to modify the stay the party opposing relief from the stay has the burden of proof to show that the relief should not be granted.  11 U.S.C. § 362(g)(2); *In re Mittlestadt*, 20 Mont. B.R. at 52; *In re Hungerford*, 19 Mont. B.R. 103, 133-34 (Bankr. D. Mont. 2001); *In re National Environmental Waste* Corp., 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996), *aff'd*, 129 F.3d 1052

---

[6] Section 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section , such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

(9th Cir. 1997).

The Court finds that Movants have established a prima facie case that cause exists for relief under § 362(d)(1) because Dick and Citigroup are not debtors, Movants seek limited relief and agree not to seek enforcement of their liens except in this Court, DV-09-1023A has been pending for years and approaches being ready for trial, and allowing Movants to proceed in state court would reduce the administrative costs which could otherwise fall on the estate for litigating the lien priority in bankruptcy court. The Debtors and Trustee have not filed a response to Movants' Motion, and therefore the burden of proof under § 362(g) to show that relief should not be granted is on Dick and Citigroup.

Their objections, other than judicial economy addressed above, mainly are based on their inability to conduct discovery and that the Debtors are an indispensable party to their defenses. The first objection regarding discovery is a red herring. The state court action in DV-09-1023A has been pending for years. Dick and Citigroup have had the right of discovery under the Montana Rules of Civil Procedure in that case. Whether they completed their discovery or not before the Debtors' bankruptcy filing, they have not shown why they have not completed it since.

The Ninth Circuit Court of Appeals has held that where discovery requests pertain to claims against a non-debtor co-defendant in a multi defendant case, the automatic stay does not protect the debtor from complying with the discovery requests. *In re Miller,* 262 B.R. 499, 504-05 (9th Cir. 2001). Debtors, by failing to respond to Debtors' Motion, admit that DV-09-1023A should proceed, which can include further discovery as permitted by the state court.

Even if the stay applied, from the petition date Dick and Citigroup have had the right to move in the bankruptcy court for a Rule 2004 examination of the Debtors' representative or "any

18

entity" related to the property, liabilities or financial condition of the Debtors, or to any other matter which may affect the administration of the estate, including compelling the production of documents.  F.R.B.P. Rule 2004.  If that were not enough, Dick and Citigroup could move for relief from the stay to conduct discovery[7].  *See Miller*, 262 B.R. at 506-07, citing *Occidental Chemical Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 41 B.R. 926, 932 (S.D.N.Y. 1984) (reversing bankruptcy court's sweeping bar of discovery from the debtor to prepare a defense of third party litigation).  This Court sees no merit in Dick's and Citigroup's contentions that they cannot proceed in DV-09-1023A because they have not completed discovery.

With respect to the contentions that the Debtor is an indispensable party to Dick's defenses under Montana Rules of Civil Procedure, this Court deems that contention outside of the scope of this contested matter.  A party seeking stay relief need only establish that it has a colorable claim to enforce a right against property of the estate.  *Veal v. American Home Mortgage Servicing, Inc., et al. (In re Veal)*, 450 B.R. 897, 914-15 (9th Cir. BAP 2011); *Gould*, 401 B.R. at 425 n. 14; *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740-41 (9th Cir. 1985).

The Movants have admitted that their state law actions against the Debtors are stayed, and that the disposition of the Debtors' assets will be done by this Court.  They do not even seek to enforce their claims against property of the estate in DV-09-1023A, but instead seek only a judgment on their lien priority claims and declaratory judgment action against Citigroup, after which they will return to bankruptcy court.  The exhibits admitted into evidence establish Movants' colorable claims to construction liens, as well as those of the joining lien creditors.

_____

[7]The relief could include a debtor being called as a witness.  *See Miller*, 262 B.R. at 505.

19

All actions to determine the validity or priority of liens, such as the construction liens in DV-09-1023A,  require an adversary proceeding under F.R.B.P. 7001(2).  *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994), adopting *Matter of Vitreous Steel Prods. Co.*, 911 F.2d 1223 (7th Cir. 1990).  "To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale lawsuit . . . and would be inconsistent with this procedural scheme." *Grella*, 42 F.3d at 33.  In *In re Luz Intern., Ltd.*, 219 B.R. 837, 843 (9th Cir. BAP 1998), the BAP explained that the hearing on a motion to modify stay is a summary proceeding in which a court should seek only to determine whether the party seeking relief has a colorable claim to property of the estate, and the expedited nature of the hearing "limits the court's ability to make a full adjudication of the merits of the parties' claims.  *Id.* at 842.  In this Court's view, the contention of Dick and Citigroup that the Debtor is an indispensable party under Montana Civil Rules goes beyond the expedited nature of the hearing.

Even so, granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay.  *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993).   Thus, while the Court has flexibility in determining whether to grant Movants' Motion for relief from the stay, by granting the Motion Dick and Citigroup would retain whatever claims and defenses they may have against Movants and the joining lienholders in DV-09-1023A or other nonbankruptcy forum, including their argument that the Debtor is an indispensable party under Montana Rules of Civil Procedure.

The Court finds and concludes that Movants have satisfied their prima facie showing, and

that Dick and Citigroup failed to satisfy their burden under § 362(g)(2) that relief from the stay

should not be granted.  The Court exercises its broad discretion and grants Movants' Motion for

relief from the stay and joinders.  *Mataya v. Kissinger*, 72 F.3d at 108-109.

      **IT IS ORDERED** a separate Order shall be entered in conformity with the above,

overruling the objections filed by Dick and Citigroup and granting Movants' Motion for relief

from the stay on the condition that Movants and other joining construction lien creditors shall not

seek enforcement, levy, or execution of any judgment obtained in any state court actions without

first requesting and obtaining relief from this Court.

 

                               BY THE COURT

 

                               HON. RALPH B. KIRSCHER
                               U.S. Bankruptcy Judge
                               United States Bankruptcy Court
                               District of Montana