UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**SPANISH PEAKS HOLDINGS II LLC**, | Case No. **12-60041-7** |
| In re<br><br>**SPANISH PEAKS LODGE LLC, and** | Case No. **12-60042-7** |
| In re<br><br>**THE CLUB AT SPANISH PEAKS LLC**,<br><br>Debtors. | Case No. **12-60043-7** |

MEMORANDUM of DECISION

At Butte in said District this 29th day of May, 2013.

In the above-referenced Chapter 11 bankruptcy cases, Ross P. Richardson, as Chapter 7 Trustee for Spanish Peaks Holdings II LLC, Spanish Peaks Lodge LLC and The Club at Spanish Peaks LLC ("Trustee'), filed a Motion to Assume Ground Lease on March 20, 2013, seeking to assume a "Ground Lease." Boyne USA, Inc. and Big Sky Resort, LLC filed an Objection to the Trustee's Motion on April 10, 2013. The Trustee also filed on March 11, 2013, an objection to Proof of Claim No. 50 filed by Boyne USA, Inc. and Big Sky Resort, LLC. After due notice, a hearing on the Trustee's Motion and Objection was held May 7, 2013, in Butte. The Trustee was represented at the hearing by John L. Amsden of Bozeman, Montana, and Boyne USA, Inc. and Big Sky Resort, LLC were represented at the hearing by Benjamin P. Hursh and David M.

1

Wagner of Missoula, Montana, Michael R. Lastowski of Wilmington, Delaware, and Paul D. Moore of Boston, Massachusetts. Stephan Garden, the Trustee, and Brian Wheeler testified. The Trustee's Exhibits 1 and 2, and Boyne USA, Inc.'s Exhibits C, D, F, G, P, Q, S, T, X, Y, and EE were admitted into evidence. Following the hearing, the Court took the matter under advisement. This Memorandum of Decision includes the Court's findings of fact and conclusions of law with respect to the Trustee's Motion to Assume Ground Lease. The Court will decide the Trustee's Objection to Boyne USA, Inc. and Big Sky Resort, LLC's Proof of Claim No. 50 by separate order at a later date.

## BACKGROUND

On May 20, 2001, District Court Judge Holly Brown of the Montana Eighteenth Judicial District Court, Gallatin County, entered a "Decision & Order Re: Boyne USA, Inc. and Big Sky Resort LLC's Motion for Summary Judgment and Spanish Peaks Holdings, LLC's ["SPH"][1] Motion for Summary Judgment." Judge Brown concluded in her May 20, 2011, decision that Boyne USA, Inc. and Big Sky Resort LLC,

> retained its rights to receive override payments and SPH retained the obligation to pay overrides to Boyne on certain property sales. Thus, as a matter of law, the Court concludes SPH must pay Boyne overrides on sales of properties located in Sections 3, 4, 9, and 10 that are subject to an override as set forth in the Southfork Agreement and the PSA.

In reaching her decision, Judge Brown set forth certain undisputed facts. The Court concurs with Judge Brown's factual findings, and includes them here to provide context for the Court's ruling on the Trustee's Motion to Assume Ground Lease.

---

[1] Spanish Peaks Holdings II, LLC is the successor-by-merger to Spanish Peaks Holdings, LLC.

I. **The Parties.**

SPH is a limited liability company. SPH owns the land on which the Club at Spanish Peaks (the "Club") is located. The Club is a private real estate development and resort located next to the Big Sky Ski area. Boyne USA, Inc. is a Michigan corporation. Big Sky Resort, LLC is a Montana limited liability company.

II. **The 1998 Southfork Agreement.**

In September 1998, Boyne entered into a Letter of Agreement with Lee Lynn, Inc. and Wiley MT, Inc. The parties have referred to this as the September ___, 1998 Agreement and, alternatively, as the Southfork Agreement. . . . The Southfork Agreement relates, in part, to providing Southfork (SPH's predecessor) and its property owners and guests ski access to the Big Sky Ski Resort.[2] Under the Southfork Agreement, Boyne agreed to give Southfork skier access to Big Sky Resort's ski terrain from Southfork's property in Sections 3, 4, 9, and 10, T. 7 S., R. 3 E, Gallatin County, at certain agreed locations.

In return, Boyne was to receive payment from Southfork of fees on the sale of Southfork property, among other things. These fees are the override fees referenced above. Under the Southfork Agreement, Boyne was entitled to receive the following override payments on certain ski in/ski out properties:

1. 4% of the sales price of the improvements on any high density lot which qualifies as being affected by the ski lifts. A high density lot is a lot with a density greater than a single family dwelling; and

2. 7% of the sales price of land on any low density lot which qualifies as being affected by the ski lifts. A low density lot or site is defined as a single family dwelling.

In addition to the above overrides, the parties agreed that Boyne also would receive overrides on the following types of property:

1. 4% of the sales price for low density property sold with a habitable structure; and

2. If a habitable structure is constructed but not sold, "for example a

---

[2] Under the Southfork Agreement, Boyne agreed to transfer "approximately 25 acres" of real property to Southfork so Southfork would have a direct physical connection to the Big Sky Resort by means of the Southern Comfort lift.

hotel or other multiple occupancy building in which Southfork retains ownership," the 4% fee applies to the construction cost of the structure. The parties agreed that the override would not apply to land used for infrastructure or service type facilities. The Southfork Agreement specifically identified examples of infrastructure or service type facilities as gas stations, laundromats, and stables. However, the parties agreed that this exemption from the override at issue in this paragraph did not apply to restaurants, bars, hotels, condominiums, retail stores and other similar uses. Overrides were to be paid on the latter structures.

Under the Southfork Agreement, while Southfork was responsible for installing and maintaining all transport lifts used to transport skiers to the Southern Comfort ski terrain, Boyne agreed to contribute up to $225,000 towards the cost of a transport lift. The parties agreed that Boyne's contribution could be made in the form of a credit against the overrides owed to Boyne under paragraph 4 of the Southfork Agreement.

The interests of Lee Lynn, Inc. and Wiley Mt., Inc. in the Southfork Agreement were assigned to Spanish Peaks Development, LLC ("SPD") by Assignment of Interest dated September 5, 2000. SPD subsequently assigned its interest in the Southfork Agreement to SPH by Assignment and Assumption dated January 25, 2002.

### III. The 2002 Purchase and Sale Agreement.

On March 30, 2002, about two months after SPH took assignment of the Southfork Agreement, Boyne and Big Sky Resort, LLC entered into a Purchase and Sale Agreement ("PSA")[3] with SPH and Big Sky Ridge, LLC. The PSA modified the Southfork Agreement. . . .

In general terms, under the PSA, Boyne transferred certain real property and contract rights to SPH and Big Sky Ridge. The PSA defines Boyne and Big Sky Resort, LLC as the "Seller." SPH and Big Sky Ridge are defined as the "Buyers." The PSA states there are several related transactions between the parties, including a Ground Lease, a Ticket Sales Agreement, and an Assignment of various contract rights and deeds, all of which were to be executed at closing. Paragraph 4.3 of the PSA states that, at closing, Boyne was to deliver to SPH and Big Sky Ridge a fully executed assignment of the contract rights, in the form

---

[3] Pursuant to the PSA, Boyne USA, Inc. and Big Sky Resort, LLC agreed to sell, and Spanish Peaks Holdings, LLC and Big Sky Ridge, LLC agreed to buy, for $7 million, Parcels I, IIA, IIB and III.

4

approved by the parties before closing. Additionally, paragraph 6.2 of the PSA indicates certain agreements are to be assigned to SPH and Big Sky Ridge, both of whom agreed to assume all rights and obligations of the assigned agreements.

The PSA modified the Southfork Agreement as follows:

> 6. **Post Closing Obligations**
>
> 6.1 <u>September 1998 Agreement</u>. (The "1998 Agreement") The 1998 Agreement (Southfork Agreement) is attached hereto as Exhibit B.2. At Closing, the 1998 Agreement will be modified by Seller and Buyers as set forth herein. The obligation of Seller to upgrade the current Southern Comfort Lift (the Lift) to the standard set forth in the 1998 Agreement shall be triggered by Buyers' filing of a preliminary plat application for the development of Buyer's land as shown in Exhibit D ("Spanish Peaks Resort"). Upon written request by Buyer, Seller shall be obligated to upgrade the Lift to a detachable high speed quad ("Lift Improvements") in the first summer season following December 31 of the year in which Buyers file their preliminary plat application for the development of Spanish Peaks Resort. If Seller fails to make the Lift improvements within the times required herein, Buyers may make the Lift improvements at their own expense, subject to the reasonable supervision of Seller, and Seller shall relinquish its rights to the payments set forth in Paragraph 6.6 [sic] below, and Seller shall have no right of reconveyance of the premises as set forth in Section 5 of the Lease.

Paragraph 6.1 provides that, if Boyne does not upgrade the Southern Comfort lift in a timely fashion, SPH and Big Sky Ridge may make the lift improvements at their own expense. If SPH and Big Sky Ridge upgraded the lift at their own expense, then Boyne would relinquish its right to payments addressed in Paragraph 6.6 [sic]. The reference to paragraph 6.6 is a typographical error and the reference should have been to paragraph 6.7.

Paragraph 6.7 of the PSA modified the Southfork Agreement regarding the payment of overrides as follows:

> 6.7 Paragraph 4 fo the 1998 Agreement [Southfork Agreement] shall be modified such that *Seller* will receive the payments described in that Paragraph 4 for all improvements located within 1,000 feet of the lower lift terminal of the transport lift or any lot whose boundary lies within 300 feet of any ski trail or run, not to extend beyond the boundaries of the Spanish Peaks Resort. Except as modified in this Agreement the terms of the 1998 Agreement remain in full force and effect.

>(emphasis added).  As a result of this modification, the "Seller" (i.e. Boyne and Big Sky Resort, LLC) was to receive override payments as specified by the language of the PSA.
>
>IV.    **The 2002 Assignment and Assumption.**
>
>On March 30, 2002, Boyne, SPH, Big Sky Ridge, LLC and Lone Moose Meadows, LLC executed an Assignment and Assumption agreement in connection with the execution of the PSA.  In the Assignment and Assumption, Boyne assigned to SPH, Big Sky Ridge, LLC and Lone Moose Meadows, LLC its right, title and interest in the Southfork Agreement (and other agreements set forth on Exhibit A to the Assignment and Assumption) to the extent the Southfork Agreement related to real property described in Exhibit B to the Assignment and Assumption.  Exhibit B to the Assignment and Assumption describes, in part, all of the land in Sections 32 and 33 in Madison County and portions of land in Sections 31, 35, and 36 in Madison County.  The express language in the Assignment and Assumption indicates Boyne did not assign its rights in the Southfork Agreement, as modified, with respect [to] properties on which it was entitled to override payments in Sections 3, 4, 9 and 10 in Gallatin County as referenced in the Southfork Agreement.

In addition to the above facts, the Southfork Agreement provides in paragraph 5 that the obligation to pay to override fees "shall run with the land, and be binding on the successors and assigns of the parties to this Agreement."  Similarly, paragraph 11 of the Southfork Agreement provides that "[t]he parties agree to record an abstract of this agreement, or such documents as are necessary to allow the terms and conditions of this agreement to be binding on and run with the land subject to this agreement."  Like the Southfork Agreement, the PSA provides in paragraph 13 that "[t]his Agreement shall survive Closing and is binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives and assigns."

Contemporaneously with the PSA, Boyne USA, Inc. and Big Sky Resort, LLC as Lessees, and Spanish Peaks Holdings, LLC and Big Sky Ridge, LLC as Lessors, entered into a "Ground Lease" whereby Boyne and Big Sky Resort, LLC agreed to lease back a portion of the property

they were selling to Spanish Peaks Holdings, LLC and Big Sky Ridge, LLC. Under the Ground Lease, Boyne agreed to provide members of Big Sky Ridge, LLC and Spanish Peaks Holdings, LLC ski access to "the Premises."[4] The Ground Lease provides in Section 2:

> The term of this Lease shall begin on March 28, 2002 ("Effective Date"), and shall continue for a period of ninety-nine (99) years plus the right to continue to renew for additional ninety (90) year terms, so long as the terms and conditions of this Lease are met, unless it is sooner terminated as provided in this Lease.

The Ground Lease also contains the following reconveyance provision:

> **6.1 Reconveyance**. When Lessors receive final plat approval for the Property, Lessees will have the right, at Lessee's expense, to take the necessary steps, including any additional surveys or platting, to require Lessors to reconvey to Lessees the portion of the Premises directly related to the Activities that are platted as ski terrain in Lessor's final plat, provided that Lessees are not in default under the 1998 Agreement, as amended. Lessees shall have this reconveyance option for ten (10) years from the date of filing of the final plat of the Premises. After that time, Lessees lose their reconveyance rights.

Boyne and Big Sky Resort, LLC contend Debtors, prepetition, sold lots that were subject to the overrides provided for in the Southfork Agreement, as amended by the PSA. The Debtors filed voluntary Chapter 7 bankruptcy petitions in the District of Delaware on October 14, 2011. United States Bankruptcy Judge Brendon Linehan Shannon transferred the Debtors' bankruptcy cases to this District on January 10, 2012, and Ross Richardson was appointed Trustee of the Debtors' bankruptcy estates shortly thereafter.

Boyne and Big Sky Resort, LLC argue, and the Trustee does not dispute, that the Trustee has filed a series of motions to extend the time to assume or reject executory contracts and leases

---

[4] The Premises generally means that portion of the property purchased by Spanish Peaks Holdings, LLC and Big Sky Ridge, LLC that was used by Boyne for certain "Activities." Under Section 6, paragraph 6.2 of the Ground Lease, the Premises "will include all property not shown as platted lots, roads, common space, open space not designated for Activities, or related easements or improvements on the final plat."

7

pursuant to 11 U.S.C. § 365(d)(1). The last request for extension was filed on May 24, 2012, and by Order entered June 12, 2012, the Court granted the Trustee until August 14, 2012, to assume or reject any of the Debtor's executory contracts and unexpired personal property leases, including but not limited to the PSA, the Southfork Agreement, and Ski Terrain Activities. The August 14, 2012, deadline expired with the Trustee taking no further action with respect to executory contracts and unexpired leases.

On February 8, 2013, Big Sky Resort LLC and Boyne filed a "Notice of Election with Respect to Ground Lease," giving notice of their election "to retain its rights under the Ground Lease, including, but not limited to, its "right of use, possession [and] quiet enjoyment" of the leasehold premises for the remainder of the balance of the ninety-nine (99) year term of the Ground Lease and any and all remaining ninety (90) year renewals provided by the Ground Lease."

On December 3, 2012, the Trustee and Spanish Peaks Acquisition Partners, LLC, a secured creditor, filed a Stipulation and Joint Motion to Approve Term Sheet (the "Term Sheet"), seeking approval the Term Sheet, which does not specifically provide for the assumption and assignment of the Ground Lease. The"Notice by Chapter 7 Trustee of Procedures for the Sale of Real Property, Deadline for Submitting Objections and Hearing and Open Court Auction Date" attached to the Term Sheet (the "Sale Notice") provides that the property subject to the sale will be sold "free and clear of all liens, claims and encumbrances, except for Permitted Encumbrances." Pursuant to the Term Sheet, the Trustee also filed a Sale Motion, whereby the Trustee proposed to sell the Debtors' property free and clear of any interests, excepting only Permitted Encumbrances. The Ground Lease is not disclosed as a Permitted Encumbrance.

8

Boyne filed an objection to the Trustee's Sale Motion, noting that the Trustee was deemed to have rejected the Ground Lease and reaffirming Boyne's intention to exercise its rights under 11 U.S.C. § 365(h).  Spanish Peaks Acquisition Partners, LLC filed a response to Boyne's objection on February 27, 2013, stating that "Boyne is correct that the Trustee rejected the Ground Lease.  Boyne is also correct that 11 U.S.C. § 365(h)(1)(A)(ii) allows Boyne to elect to retain its 'right of use, possession [and] quiet enjoyment' under the Ground Lease with respect to the portion of the Real Property subject to the Ground Lease[,]" but arguing that the Southfork Agreement, as modified, is the subject of a bona fide dispute and that Boyne's right to override payments on prepetition sales is simply an unsecured contractual claim against the Debtor because:

> 5.  On January 25, 2005, Boyne recorded an "Abstract of Agreement" (the "Abstract") of the 2002 PSA (but not the 1998 Agreement) in Gallatin County.  *See* Exhibit 1.  A couple of weeks later, on February 9, 2005, Boyne recorded the Abstract in Madison County.  *Id.*
>
> 6.  In October, 2005, however, Boyne executed a "Notice of Withdrawal and Termination and Abstract of Agreement" (the "Withdrawal and Termination").  *See* Exhibit 2.  The Withdrawal and Termination gave notice that the Abstract "is hereby terminated from and withdrawn of record and shall have no further force and effect." *Id.* Boyne recorded the Withdrawal and Termination in Gallatin County on October 14, 2005 and in Madison County on October 17, 2005. *Id.*

Boyne filed on April 1, 2011, a Notice of Lis Pendens in Gallatin County and filed on April 4, 2011, a Notice of Lis Pendens in Madison County, asserting, by virtue of the Southfork Agreement, as modified, an interest in all Debtors' real property located in Sections 3, 4, 9, and 10.

The Court approved the Trustee's Notice of Sale and Bidding Procedures for the Sale of Real Property Free and Clear of Liens, Claims, Interests, and Encumbrances.  Based upon the

foregoing, Boyne contends the Trustee has rejected the Ground Lease, subject only to Boyne's right of use, possession and quiet enjoyment of the ski terrain.

In the interim, CrossHarbor Capital Partners, LLC, or one of its affiliated entities, acquired Spanish Peaks Acquisition Partners, LLC's position in a joint venture with Boyne USA, Inc. CrossHarbor Capital Partners, LLC and Boyne USA, Inc. took Spanish Peaks Acquisition Partners, LLC's position subject to the settlement term sheet approved by the Court.

Under the sales procedure Order, the Trustee received bids from two qualified bidders. After reviewing the bids, the Trustee has concluded that Satterfield SP Acquisition, LLC, or its assigns, presented the best offer for Debtors' property, which includes a purchase price of $22,050,000.00. The Asset Purchase Agreement between the Trustee and Satterfield SP Acquisition, LLC requires that Satterfield SP Acquisition, LLC "and its successors and assigns shall have all rights set forth in the Ground Lease between Big Sky Ridge LLC and Spanish Peaks Holdings LLC, as lessors, and Boyne USA, Inc. and Big Sky Resort LLC, as lessees, including but not limited to those rights set forth in sections 8.1 and 8.2 of said Ground Lease[.]"

As a result of the Asset Purchase Agreement with Satterfield SP Acquisition, LLC, the Trustee filed on March 20, 2013, the pending Motion to Assume Ground Lease. Boyne USA, Inc. and Big Sky Resort LLC oppose the Trustee's motion arguing: (1) the Trustee has rejected the Ground Lease; (2) the Trustee is judicially estopped from asserting that the Ground Lease has not been rejected; (3) that the Ground Lease and several other interrelated documents constitute one entire agreement, the constituent components, and benefits and burdens, of which cannot be selectively rejected and assumed; and (4) the Trustee's proffered business reasons for filing the Motion to Assume are not supported by the record.

An auction of the Debtors' assets is scheduled for June 3, 2013, followed immediately by a hearing on approval of the sale. The Trustee has agreed to escrow the entire purchase price of the property until all claims to the proceeds are resolved. Boyne USA, Inc. and Big Sky Resort, LLC reject the Trustee's proposal. Notwithstanding, all parties agree that the sales process must occur and all parties, except Boyne USA, Inc. and Big Sky Resort, LLC, agree that a cash bid is preferable because multiple parties, namely Boyne, Dick Construction and various construction lien claimants, assert a first priority lien in Debtors' real property. For the reasons discussed below, the Trustee's Motion to Assume Ground Lease is granted.

APPLICABLE LAW and DISCUSSION

In general terms and for purposes of this decision, under the Southfork Agreement, Boyne agreed to transfer approximately twenty-five acres to Spanish Peaks Holdings, LLC's predecessor and grant Spanish Peaks Holdings, LLC's predecessor ski in/ski out access to Big Sky Resort. In exchange for the 25 acres and the ski in/ski out access to Big Sky Resort, Spanish Peaks Holdings, LLC's predecessor agreed to pay Boyne certain overrides. The PSA ratified the Southfork Agreement and modified and clarified the override payments due under the Southfork Agreement. Because Boyne had transferred some of its ski terrain to Spanish Peaks Holdings, LLC under the PSA, Boyne and Spanish Peaks Holdings, LLC also entered into the Ground Lease, which granted to Boyne the use of all ski terrain and access points necessary to maintain ski operations operated on the property that was the subject of the PSA. In return, Section 8 of the Ground Lease grants the Lessors, their agents, employees, members, guests, invitees and assigns the right to use and enjoy the "Premises" with and without restrictions, depending on whether the use is directly or not directly related to "the Activities."

Despite Boyne's contentions to the contrary, the Trustee has not previously rejected the Ground Lease and the Ground Lease is not deemed rejected under the Bankruptcy Code. The Bankruptcy Code provides trustees maximum flexibility in situations where the Chapter 7 debtor is the lessor of nonresidential real property. In such scenarios, the time periods of 11 U.S.C. § 365(d)(1) are not applicable. Similarly, the lease is not deemed rejected under 11 U.S.C. § 365(d)(4). Moreover, FED.R.BANKR.P. 6006 does not provide a procedure for compelling a Chapter 7 trustee to assume or reject a lease under such circumstances.

Contrary to Boyne's assertions, the fact that the Trustee sought four extensions of time to reject, assume, or assume and assign executory contracts, and referenced ski terrain activities therein, does not create a deadline for assuming or rejecting executory agreements that did not otherwise exist. Boyne also argues that the Trustee rejected the Ground Lease in the Term Sheet, Sale Motion and Bidding Procedures Order. With respect to the Term Sheet, Boyne complains that the proposed Notice attached to the Trustee's Stipulation and Joint Motion to Approve Term Sheet states that the "property subject to the sale will be sold "free and clear of all liens, claims and encumbrances, except for Permitted Encumbrances[,]" and that the Permitted Encumbrances described in Exhibit D do not reference the Ground Lease. While the Ground Lease is not specifically identified as a "permitted encumbrance" on the attached Exhibit D, Exhibit D also provides that a permitted encumbrance is any "[o]ther encumbrance acceptable to the Successful Bidder in its sole discretion." The Court does not read the language of the Notice as a specific rejection of the Ground Lease and Boyne cites to no other portion of the Stipulation and Joint Motion to Approve Term Sheet, or the attachments thereto, in support of its argument that the Trustee has rejected the Ground Lease. Boyne's reliance on the Trustee's Sale Motion, which

12

was filed pursuant to the Term Sheet, fails for the same reason.

Next, Boyne argues that the Asset Purchase Agreement form which the Trustee filed as an exhibit to a motion filed January 15, 2013, defines the term "Assumed Obligations" as "any obligations set forth on the Assumption Schedule attached as Exhibit C." The referenced Exhibit C states "None." The Court does not consider the Trustee's proposed asset purchase agreement a specific rejection of the Ground Lease. The Trustee's proposal is just that, a proposal. Indeed, it is the prospective buyer, and not the Trustee, who will arguably decide which obligations it wants to assume. Schedule C will undoubtedly take form as the sales process progresses.

For the reasons discussed above, the Court finds that the Trustee has not rejected the Ground Lease. The Court also finds no merit in Boyne's judicial estoppel argument where the statements that form the basis of Boyne's argument were made by Spanish Peaks Acquisition Partners, LLC, and not the Trustee.

Next, while the Ground Lease recognizes that several related transactions exist between the parties, which were executed contemporaneously, the Court rejects Boyne's argument that the Trustee must also assume the Southfork Agreement and the PSA if he wants to assume the Ground Lease, particularly where the Ground Lease is not ambiguous. The Court agrees with Boyne that the Trustee cannot selectively reject or assume specific components of the Ground Lease. The Trustee must either assume or reject the entire Ground Lease and in this case, the Trustee is seeking to assume the entire Ground Lease.

The Court likewise rejects Boyne's argument that the Trustee has not proffered a business reasons for filing the Motion to Assume Ground Lease. The Trustee contends Debtors' real property is more valuable with ski in/ski out access. Boyne does not dispute such contention.

The Trustee has a sound business reason for filing the Motion to Assume Ground Lease. Additionally, Boyne does not contend the Ground Lease is in default. Thus, assumption of the Ground Lease does not impose a burden on the estate by requiring a need to cure or the need for adequate assurance of future performance.

For the reasons stated above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's Motion to Assume Ground Lease filed March 20, 2013, at docket entry no. 446 is GRANTED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana