**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re | |
| **SPANISH PEAKS HOLDINGS II LLC,** | **Case No. 12-60041-7** |
| **SPANISH PEAKS LODGE LLC, and** | **Case No. 12-60042-7** |
| **THE CLUB AT SPANISH PEAKS LLC,** | **Case No. 12-60043-7** |
| | **JOINTLY ADMINISTERED** |
| **Debtors.** | |

**MEMORANDUM OF DECISION**

**INTRODUCTION**

The chapter 7 trustee, Ross Richardson ("Trustee"), and creditor CH SP

Acquisition LLC ("CH SP") (together the "Movants") filed a "Joint Motion for Order

Denying Pinnacle Restaurant at Big Sky, LLC and Montana Opticom, LLC's Motion for

Adequate Protection," Doc. No. 983 ("Motion").[1]  The Motion came on for hearing on

February 22, 2018.  The Motion, and the objections of Pinnacle Restaurant at Big Sky,

LLC ("Pinnacle") and Montana Opticom, LLC ("Opticom") (sometimes referred to

together as the "Respondents"), were taken under advisement following argument.  This

Decision constitutes the Court's findings and conclusions pursuant to Rules 7052 and

9014.

---

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

The Ninth Circuit Court of Appeals issued *Pinnacle Restaurant at Big Sky, LLC v. CH SP Acquistions, LLC (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892, 894–96 (9th Cir. 2017), which provides the background to evaluate the Motion and Respondents' opposition.[2]  As there discussed (and here abbreviated), Spanish Peaks was a 5,700-acre resort in Big Sky, Montana, that included a ski club, golf course, and residential and commercial properties, envisioned by developers James J. Dolan, Jr. and Timothy Blixseth.  The project was financed with a $130 million loan, initially secured to the benefit of Citigroup Global Markets Realty Corp. ("Citigroup"), which later assigned its note and mortgage to Spanish Peaks Acquisition Partners, LLC ("SPAP"), which later assigned its interest to CH SP.

In 2006, Spanish Peaks Holdings II, LLC ("SPH") leased restaurant space to Spanish Peaks Development, LLC ("SPD") for $1,000 *per month*.  Dolan was an officer of both SPH and SPD and signed the lease on behalf of both lessor and lessee.  The 2006 lease was replaced a year later with a 99-year leasehold under which SPD would pay $1,000 *per year*.[3]  In 2008, SPD assigned its lease to Pinnacle.  In 2009, SPH leased a separate parcel to Opticom, of which Dolan was the sole member.  That lease had a 60-

---

[2]  The Court has also taken judicial notice of its own files and records to summarize the history of the case and provide context.  Fed. R. Evid. 201.  This Decision, however, eschews most references to the docket, which now has more than 1,000 entries.

[3]  This Court's March 10, 2014 Decision by Bankruptcy Judge Ralph B. Kirscher, discussed *infra*, indicated evidence showed "a reasonable rental rate for the Pinnacle Restaurant is somewhere between $40,000 and $100,000 per year."  Doc. No. 856 at 6.

year term and a rent of $1,285 *per year*.[4]  Neither Pinnacle nor Opticom obtained a

subordination, non-disturbance or similar agreement from Citigroup or SPAP.

After suffering setbacks and mounting losses, SPH and related entities (The Club

at Spanish Peaks LLC and Spanish Peaks Lodge LLC) (together the "Debtors"), filed

chapter 7 petitions on October 14, 2011.  The Court entered an Order directing those

cases be jointly administered.

SPAP was the Debtors' largest creditor with a $122 million claim secured by a

mortgage.  Trustee and SPAP agreed to a liquidating plan that involved an auction sale

under § 363 "free and clear of any and all liens, claims, encumbrances and interests"

(except certain specified "Permitted Encumbrances") and provided that certain specified

liens would be paid from the proceeds or otherwise protected.  The Leases were not

included among the Permitted Encumbrances, nor were they among the interests that

would be paid or protected.  Pinnacle and Opticom objected to the sale, arguing they had

the right to continued possession of the leaseholds under the Code.

The auction sale, premised on a January 15, 2013 motion, was held on June 3,

2013.  As the holder of the $122 million senior mortgage, CH SP was the successful

bidder with a $26.1 million bid.  Bankruptcy Judge Kirscher conducted a sale hearing that

day and heard argument from Pinnacle and Opticom regarding their lease interests.  On

---

[4]  The Pinnacle and Opticom leases are referred to by the Respondents as the "Leases" and by the Movants as the "Insider Leases."  While the Movants' characterization is accurate, the Court will simply refer to them as the "Leases."

June 11, Pinnacle's predecessor (SPD), Opticom and others filed a brief in support of their objection to the sale, arguing § 365(h) preserved the lessees' possessory interests under the Leases (*i.e.*, the assets could not be sold free and clear of their § 365(h) rights) and, alternatively, they were entitled to adequate protection.  Doc. No. 594.[5]

On June 13, Judge Kirscher entered an amended Order approving the sale but reserving the Lease issues subject to further briefing.  On September 27, 2013, CH SP filed a motion, Doc. No. 727, seeking a ruling that the property was sold free and clear of the Leases.  Pinnacle and Opticom objected, Doc. No. 746, arguing—again—that § 365(h) precluded a sale free and clear of their rights under the Leases and claiming entitlement to adequate protection.  A hearing was held in November 2013 and, on March 10, 2014, the Court issued its Decision.  Doc. No. 856.[6]

The Court's Decision stated:

> Finally, CH SP Acquisition, LLC seeks a determination by this Court (a) that the sale of substantially all of the Debtors' assets under 11 U.S.C. § 363 to CH SP Acquisition, LLC, was free and clear of the Pinnacle Restaurant Lease and the Opticom Lease, and (b) that 11 U.S.C. § 365(h) does not apply to preserve the Debtor-Affiliates' subordinate and/or voidable leasehold interests following the Sale.  CH SP Acquisition, LLC argues in its Motion that the sale at issue in this case was free and clear under §§ 363(f)(1),

---

[5]  This brief stated: "[A]ssuming *arguendo* that CHSP's position [regarding ability to sell under § 363(f) free and clear of § 365(h) rights] is correct, [the objector] is nevertheless entitled to adequate protection pursuant to § 363(e) with respect to both Leases."  *Id.* at 8.

[6]  As the March 10, 2014 Decision indicates, Trustee filed a motion to reject the Pinnacle and Opticom Leases on September 12, 2013, on the basis that, given the sale, "the Estates no longer possess the property that is the subject of the Leases."  The Decision further states that there were no objections raised and on October 1, 2013, the Court granted that motion.  Doc. No. 856 at 14; *see also* Doc. No. 729 (Order granting motion, Doc. No. 720, and rejecting the Leases).

(4) and (5).  The Debtor-Affiliates do not dispute that at least one provision of § 363(f) was satisfied.  The parties also appear to agree that the term "any interest" as used in § 363(f) includes the Debtor-Affiliates' possessory interest as lessees.

*Id.* at 22–23.[7]  After addressing the parties' arguments and case law, *id.* at 23–31, the Court found:

(a)  "that a case-by-case, fact-intensive, totality of the circumstances, approach, rather than a bright line rule, governs whether § 363(f) or § 365(h) prevails in any given situation[;]"

(b)  the Debtor-Affiliates did not dispute that at least one provision of § 363(f) was satisfied;

(c)  they similarly did not dispute that Trustee advanced good and sufficient business justification for the sale "or [dispute] that CH SP Acquisition, LLC is entitled to the protections of a good faith purchaser under § 363(m)," as set forth in the Sale Order;

(d)  the Leases were entered into at a time when all parties (both lessor and lessees) were controlled by Dolan; the Pinnacle lease rate was far below fair market rental for the Big Sky area; and the Opticom lease with an initial 60 year term was unrecorded;

(e)  CH SP presented evidence that the Leases were in bona fide dispute and may be subject to closer scrutiny;

(f)  Dolan and Pinnacle had closed the doors at the Pinnacle Restaurant and had

---

[7]  "Debtor-Affiliates" was defined and included Pinnacle Restaurant at Big Sky, LLC and Montana Opticom, LLC.  *Id.* at 2.

not operated since April 2011;

(g) Pinnacle and Opticom "did not seek or obtain a subordination agreement or nondisturbance agreement from Citigroup" (CH SP's predecessor in interest); and

(h) nothing in the Citigroup amended loan agreement of March 16, 2010, was shown by the Debtor-Affiliates to "in any way change or elevate the priority of the lessees' interests over that of Citigroup or otherwise alter the priority scheme under Montana law" and, in fact, the original loan agreement of November 30, 2006, subordinated leases to the mortgage.[8] *Id.* at 31–34.

Thus, the Court concluded "§ 365(h) preserves a tenant's rights, but does not enhance said rights[]" and while "§ 365(h) is intended to protect the term for which a lessee bargains" here Pinnacle and Opticom, through Dolan, "were aware of the senior mortgage and if they wanted protection from an act, such as a foreclosure, they could have asked Citigroup for a subordination agreement or similar agreement. No such agreement exists in this case." *Id.* at 34.

The Court continued by concluding that "The Debtor-Affiliates have provided no evidence that they will suffer any economic harm if their possessory interests are terminated. In the absence of any request for adequate protection or allegation that some harm will result, the Court finds that any claim the Debtor-Affiliates may have for

---

[8] The Leases were entered into after the original loan agreement but before the amended loan agreement. *See id.*, at 4–5.

adequate protection pursuant to § 363(e) has not been established." *Id.*[9]

After the Court's March 10, 2014 Decision and Order, Pinnacle and Opticom filed

a notice of appeal on March 24, 2014. Doc. No. 863. They appealed "from the Court's

Order on only one of the contested matters" which was the Court's conclusion that "the

sale of substantially all of the Debtors' assets to CH SP Acquisition, LLC was free and

clear of the Insider Leases and the Debtor-Affiliates' possessory interests under the

Insider Leases; and the Debtor-Affiliates, their respective officers, agents and employees

who have access to and control over any portion of the Assets shall cease exercising

control over any portion of the Assets and are hereby enjoined from exercising control

over any portion of the Assets and from interfering with CH SP Acquisition LLC's use,

peaceful enjoyment and control over the Assets." *Id.* at 2 (quoting Order, Doc. No. 858 at

2).

---

[9] After CH SP's motion to determine the sale was free and clear of Respondents' Leases, and
prior to the Court's ruling, Trustee and numerous parties, including Pinnacle and Opticom, entered into a
Settlement Agreement effective as of October 14, 2013. The Agreement was attached to Trustee's notice
of settlement, Doc. No. 743, and to his motion for approval of settlement, Doc. No. 756. The motion to
approve the Settlement Agreement was heard on November 13, 2013, and it was taken under advisement
subject to briefing. The Court's March 10, 2014 Decision also addressed, and approved over objection,
the Settlement Agreement. Doc. No. 856 at 17–22. Under that Agreement, the Insider-Affiliates
"irrevocably waive[d] and release[d] [the Debtors, the Debtor's estate and the Trustee] of any and all
claims, actions, causes of action and demands of every kind and nature relating to the [bankruptcy cases],
whether known or unknown . . ., including all rights, claims, actions or causes of action that the [Insider-
Affiliates] could bring as a matter of law or equity . . . ." An exception was expressly made in Section 5
of the Agreement, reserving the Movants' contentions that the Leases were unenforceable and the
Respondents' contention that the Leases were valid and enforceable—a contention that subsumed
Respondents' argument advanced in their filings that the lessees' possessory rights under § 365(h)
survived the sale notwithstanding § 363(f). However, nothing in this Agreement, or this exception,
reserved any monetary claim for adequate protection. The Decision of the District Court on appeal
affirming the settlement (Case No. 14-cv-00022-SEH) is in this record as Doc. No. 906. It was later
affirmed by the Ninth Circuit in an unpublished memorandum also docketed in this case as Doc. No. 945.

On April 9, 2014, Pinnacle and Opticom filed a Motion for Adequate Protection. Doc. No. 880 (the "AP Motion").  But on June 30, 2014, the Court entered an order granting a joint motion of Trustee, Pinnacle and Opticom to continue the AP Motion and objections thereto until the appeal was resolved.  Doc. No. 897 (granting joint motion, Doc. No. 896).

The District Court affirmed the March 10, 2014 Bankruptcy Court Decision.[10]  As the Ninth Circuit noted, "the district court held that the sale extinguished the leases because the foreclosure of a mortgage would, under Montana law, terminate any leasehold interests junior to the mortgage."  872 F.2d at 896.  The Ninth Circuit also noted that Pinnacle and Opticom had requested "monetary compensation as 'adequate protection' for their 'divested interests' in the property" but that this motion was never ruled upon, *see id.* at n.3, an observation consistent with the parties' joint motion noted above.

The Motion now pending is Movants' request for an order denying Pinnacle and Opticom's AP Motion.

**DISCUSSION AND DISPOSITION**

The issues before the Court are legal in nature, and they are based on the record in this case and on appeal.  Additional evidence was therefore not taken.  The parties' prehearing briefs and oral argument focused on four distinct though interrelated issues

---

[10]  The District Court's June 23, 2015 Decision affirming the sale free and clear of the Leases (Case No. 14-cv-00040-SEH) is in this record as Doc. No. 914.

raised by Movants in their Motion: application of the doctrine of res judicata; the effect of the Settlement Agreement; the rights of the Lessees given the mortgage and Montana law; and the untimeliness of the AP Motion.  The Court determines that not all of the grounds advanced by Movants need be addressed.

### A.    Res judicata

The Supreme Court has adopted the terminology of the Restatement (Second) of Judgments, and uses "claim preclusion" in place of res judicata and "issue preclusion" in place of collateral estoppel.  *In re Hathaway*, 401 B.R. 477, 481 (Bankr. W.D. Wa. 2009) (citing *George v. City of Morro Bay (In re George)*, 318 B.R. 729, 733 (9th Cir. BAP 2004) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  The application of these doctrines is committed to the Court's discretion.  *George,* 318 B.R. at 733 (citing *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988)).  "Issue preclusion bars relitigation only of issues that have been actually litigated, while the broader brush of claim preclusion may also bar a cause of action that has never been litigated."  *Id.* at 733 (citing *Alary Corp v. Sims (In re Assoc'd Vintage Group, Inc.)*, 283 B.R. 549, 555 (9th Cir. BAP 2002)).

What constitutes a "claim" for purposes of claim preclusion is determined by the "transactional test" which "focuses on the transactional nucleus of operative facts and includes all rights to remedies with respect to all or any part of the 'transaction,' determined pragmatically, out of which the action arose, so long as they could

conveniently be tried together." *Id.* at 735 (citing *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).  Moreover, under claim preclusion: "Legal theories and remedies not asserted are extinguished." *Id.* at 736 (citing *Lindsay v. Beneficial Reins. Co. (In re Lindsay)*, 59 F.3d 942, 952 (9th Cir. 1995)).  "Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Robi*, 838 F.2d at 322 (citations and footnote omitted).[11]  As stated in *Hathaway*, "When there has been a final judgment on a part of a 'claim,' the right to obtain remedies respecting that claim is extinguished."  401 B.R. at 482 (citing *George*, 318 B.R. at 735–36).

"Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits."  *Rein v. Providian Financial Corp.*, 270 F.3d 895, 899 (9th Cir. 2001).  Factors to be considered in determining whether the same claim or cause of action is involved are (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the

---

[11]  *See Decker v. Washington Mutual Bank (In re Decker)*, 357 B.R. 825, 831–34 (Bankr. D. Mont. 2007) (analyzing and applying the principles announced in *George* to bar, on the basis of claim preclusion, an adversary proceeding by debtors against a deed of trust creditor asserting causes of action for fraud, rescission, violation of Truth in Lending Act, unconscionable contract, and usury because of the existence of the debtors' prior adversary proceeding brought against the creditor in the debtors' first bankruptcy case asserting different theories and causes such as overstatement of claim, deceptive and false filing of claims and charges, deception and overreaching with intent to defraud, commission of unfair trade practice, violation of the Fair Debt Collection Practices Act, etc.).

same evidence is presented in the two actions; (3) whether the two suits involve

infringement of the same right; and (4) whether the two suits arise out of the same

transaction or nucleus of facts." *Rein*, 270 F.3d at 903.

Here, the decisions are clear. The Ninth Circuit held "on the facts of this case,

section 363 applies and section 365 does not." 872 F.3d at 894. It resolved the "apparent

conflict" between these sections and addressed the split in case law on the subject. *Id.* at

897–900.[12]   Section 363(e)—the provision relied upon by Pinnacle and Opticom in their

AP Motion—states in pertinent part:

> (e) Notwithstanding any other provision of this section, at any time, on request
> of an entity that has an interest in property used, sold, or leased, or proposed
> to be used, sold, or leased, by the trustee, the court, with or without a hearing,
> shall prohibit or condition such use, sale, or lease as is necessary to provide
> adequate protection of such interest.

The Circuit expressly noted that despite "the mandatory language of section 363(e)"

providing for adequate protection if a request is made: "Pinnacle and Opticom did not ask

for adequate protection until after the sale had taken place—not, indeed, until they had

appealed to the district court []—the question of what protection the bankruptcy court

could have or should have awarded is not before us." *Id.* at 900. Moreover, the Montana

Bankruptcy Court found that "any claim the Debtor-Affiliates may have for adequate

protection pursuant to § 363(e) has not been established."

---

[12] *IDEA Boardwalk, LLC v. Polo N. Country Club, Inc.*, 2017 WL 4927667 (D.N.J. Oct. 31, 2017), recently noted that some courts hold that a tenant's rights under § 365(h) trump a sale under § 363(f) and that property cannot be sold free and clear of the lessees' interests under § 365(h), while other courts, including the Ninth Circuit here, disagree. *Id.* at *6 n.12 (citing cases). Scholarly debate, however, is immaterial; this Court is bound by the Ninth Circuit's decision.

Upon review of this record, the Court finds and concludes that the prosecution of the AP Motion is barred by claim preclusion. The parties are clearly the same. The prior judgment was on the merits and is final.[13] The "claim" of adequate protection here asserted under the AP Motion arises out of the same transactional nucleus of operative facts as involved in the prior litigation involving the sale. As held in the above cases, claim preclusion bars grounds for recovery that were available and not asserted or not determined in the prior litigation.

Thus, even if Pinnacle and Opticom's argument that they "did not formally assert their claim for adequate protection under § 363(e) until the filing of the AP Motion," is taken as true, res judicata still bars the later assertion in the AP Motion. Doc. No. 995 at 5.[14] Under the authorities discussed above, unasserted claims fall within the preclusive bar because the "claim" arises out of the same transactional nucleus of operative facts.

The Motion is therefore well taken, and the assertion of the AP Motion by Pinnacle and Opticom is barred by claim preclusion.

---

[13] The Movants' assertion that there was no request for rehearing or *en banc* review at the Circuit and no petition for certiorari was not challenged by Respondents.

[14] In replying to Movants' argument that adequate protection was raised by Pinnacle and Opticom during the litigation of the Lease Motion and on appeal at the District Court and Court of Appeals, Pinnacle and Opticom state: "Admittedly, Respondents may have believed they sufficiently asserted a legal right to adequate protection and, therefore, made that alternative argument on appeal." Doc. No. 995 at 5. However, their position seems to be that the absence of a formal request or motion precludes a finding that adequate protection "has already been litigated." *Id.* This too narrowly views the issue, and conflates issue preclusion (*i.e.*, the issue was litigated) with claim preclusion (the bar on claims, grounds, defenses that were available and not asserted). Moreover, Pinnacle and Opticom provide no authority supporting their argument that the manner of assertion—formally (*i.e.*, by filing a "motion") or informally (through reference to the right during the process of asserting § 365(h) rights)—is critical for preclusion purposes.

### B.     The effect of the mortgage

In the March 10, 2014 Decision, this Court noted the effect of Mont. Code. Ann.

§ 70-21-304, and specifically found that Pinnacle and Opticom did not seek or obtain a

subordination agreement or a nondisturbance agreement from the mortgagee.  It

concluded that Respondents cited "to nothing in the Amended Loan Agreement that

would in any way change or elevate the priority of the lessees' interests over that of

Citigroup or otherwise alter the priority scheme under Montana law[.]"  It also found they

were aware of the senior mortgage and if they wanted protection from foreclosure they

could have sought a subordination or similar agreement.  Doc. No. 856 at 32–34.

The District Court agreed the Leases were subordinate to the mortgage, and it

concluded that foreclosure of the mortgage and sale of the property in satisfaction of the

secured debt terminated the interests of the junior lease holders and extinguished such

interests, thus meeting the spirit and requirements of § 363(f)(1).  Doc. No. 914 at 4.

The Ninth Circuit "focus[ed] on 11 U.S.C. § 363(f)(1), which authorizes a sale if

'applicable nonbankruptcy law permits sale of such property free and clear of such

interest.'" 872 F.3d at 900.  It held that, [u]nder Montana law, a foreclosure sale to satisfy

a mortgage terminates a subsequent lease on the mortgaged property." *Id.*  It observed

that the "bankruptcy proceeded, practically speaking, like a foreclosure sale—hardly

surprising since [debtors'] largest creditor was the holder of the note and mortgage on the

property[]" and concluded that "Such a sale would have terminated the Pinnacle and

Opticom leases." *Id.*

Pinnacle and Opticom fail to effectively address this issue identified by all three courts regarding the lack of a subordination or non-disturbance agreement. In some ways, they attempt to redefine or recast the issue. For example, they question whether a sale free and clear under § 363(f) could include the "improvements" on the leased ground at all.

In their briefing, Pinnacle and Opticom assert "it would be a clear abuse of the free and clear sale process to allow a buyer of estate assets to take control, possession and even purported ownership of non-estate assets. That is clearly what occurred in these proceedings and Respondents are entitled to compensation in the form of adequate protection for the property interests that have been taken from them." Doc. No. 995 at 8. However, Movants counter that both Leases contained terms providing that on expiration or termination of the Leases, any permanent improvements would become part of the leased premises and remain property of the lessor. Doc. No. 997 at 8. Respondents' assertions on this score either were litigated at the time the sale motion came before the Court or, under claim preclusion principles, necessarily should have been. And, in any event, the alleged defects in the sale process are rendered moot by the final judgment of the Ninth Circuit resolving the appeal. That "compensation in the form of adequate protection" springs here from the litigation ashes is not persuasively advanced or adequately supported.

**CONCLUSION**

Having evaluated the parties' arguments[15] and applicable authorities, and based on the record before it, the Court finds and concludes that the Motion is well taken, and the AP Motion will be denied.  An order will be entered accordingly.

DATED:  April 24, 2018

TERRY L. MYERS
U. S. BANKRUPTCY JUDGE

---

[15]  The Court concludes the other alternative grounds Movants advanced in seeking denial of the AP Motion need not be considered.